(Slip Opinion) OCTOBER TERM, 2016 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## STAR ATHLETICA, L.L.C. *v.* VARSITY BRANDS, INC., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 15–866.  Argued October 31, 2016—Decided  March 22, 2017

The Copyright Act of 1976 makes "pictorial, graphic, or sculptural features" of the "design of a useful article" eligible for copyright protection as artistic works if those features "can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article."  17 U. S. C. §101.

   Respondents have more than 200 copyright registrations for twodimensional designs—consisting of various lines, chevrons, and colorful shapes—appearing on the surface of the cheerleading uniforms that they design, make, and sell.  They sued petitioner, who also markets cheerleading uniforms, for copyright infringement.  The District Court granted petitioner summary judgment, holding that the designs could not be conceptually or physically separated from the uniforms and were therefore ineligible for copyright protection.  In reversing, the Sixth Circuit concluded that the graphics could be "identified separately" and were "capable of existing independently" of the uniforms under §101.

*Held*: A feature incorporated into the design of a useful article is eligible for copyright protection only if the feature (1) can be perceived as a two- or three-dimensional work of art separate from the useful article, and (2) would qualify as a protectable pictorial, graphic, or sculptural work—either on its own or fixed in some other tangible medium of expression—if it were imagined separately from the useful article into which it is incorporated.  That test is satisfied here.  Pp. 3–17.

   (a) Separability analysis is necessary in this case.  Respondents claim that two-dimensional surface decorations are always separable, even without resorting to a §101 analysis, because they are "*on* a useful article" rather than "*designs of* a useful article."  But this argu-

ment is inconsistent with §101's text. "[P]ictorial" and "graphic" denote two-dimensional features such as pictures, paintings, or drawings. Thus, by providing protection for "pictorial, graphical, and sculptural works" incorporated into the "design of a useful article," §101 necessarily contemplates that such a design can include two-dimensional features. This Court will not adjudicate in the first instance the Government's distinct argument against applying separability analysis, which was neither raised below nor advanced here by any party. Pp. 4–6.

(b) Whether a feature incorporated into a useful article "can be identified separately from," and is "capable of existing independently of," the article's "utilitarian aspects" is a matter of "statutory interpretation." *Mazer* v. *Stein*, 347 U. S. 201, 214. Pp. 6–10.

(1) Section 101's separate-identification requirement is met if the decisionmaker is able to look at the useful article and spot some two- or three-dimensional element that appears to have pictorial, graphic, or sculptural qualities. To satisfy the independent-existence requirement, the feature must be able to exist as its own pictorial, graphic, or sculptural work once it is imagined apart from the useful article. If the feature could not exist as a pictorial, graphic, or sculptural work on its own, it is simply one of the article's utilitarian aspects. And to qualify as a pictorial, graphic, or sculptural work on its own, the feature cannot be a useful article or "[a]n article that is normally a part of a useful article," §101. Neither could one claim a copyright in a useful article by creating a replica of it in another medium. Pp. 7–8.

(2) The statute as a whole confirms this interpretation. Section 101, which protects art first fixed in the medium of a useful article, is essentially the mirror image of §113(a), which protects art first fixed in a medium other than a useful article and subsequently applied to a useful article. Together, these provisions make clear that copyright protection extends to pictorial, graphic, and sculptural works regardless of whether they were created as freestanding art or as features of useful articles. P. 8.

(3) This interpretation is also consistent with the Copyright Act's history. In *Mazer*, a case decided under the 1909 Copyright Act, the Court held that respondents owned a copyright in a statuette created for use as a lamp base. In so holding, the Court approved a Copyright Office regulation extending protection to works of art that might also serve a useful purpose and held that it was irrelevant to the copyright inquiry whether the statuette was initially created as a freestanding sculpture or as a lamp base. Soon after, the Copyright Office enacted a regulation implementing *Mazer*'s holding that anticipated the language of §101, thereby introducing the modern separa-

bility test to copyright law. Congress essentially lifted the language from those post-*Mazer* regulations and placed it in §101 of the 1976 Act. Pp. 8–10.

(c) Applying the proper test here, the surface decorations on the cheerleading uniforms are separable and therefore eligible for copyright protection. First, the decorations can be identified as features having pictorial, graphic, or sculptural qualities. Second, if those decorations were separated from the uniforms and applied in another medium, they would qualify as two-dimensional works of art under §101. Imaginatively removing the decorations from the uniforms and applying them in another medium also would not replicate the uniform itself.

The dissent argues that the decorations are ineligible for copyright protection because, when imaginatively extracted, they form a picture of a cheerleading uniform. Petitioner similarly claims that the decorations cannot be copyrighted because, even when extracted from the useful article, they retain the outline of a cheerleading uniform. But this is not a bar to copyright. Just as two-dimensional fine art correlates to the shape of the canvas on which it is painted, two-dimensional applied art correlates to the contours of the article on which it is applied. The only feature of respondents' cheerleading uniform eligible for a copyright is the two-dimensional applied art on the surface of the uniforms. Respondents may prohibit the reproduction only of the surface designs on a uniform or in any other medium of expression. Respondents have no right to prevent anyone from manufacturing a cheerleading uniform that is identical in shape, cut, or dimensions to the uniforms at issue here. Pp. 10–12.

(d) None of the objections raised by petitioner or the Government is meritorious. Pp. 12–17.

(1) Petitioner and the Government focus on the relative utility of the plain white uniform that would remain if the designs were physically removed from the uniform. But the separability inquiry focuses on the extracted feature and not on any aspects of the useful article remaining after the imaginary extraction. The statute does not require the imagined remainder to be a fully functioning useful article at all. Nor can an artistic feature that would be eligible for copyright protection on its own lose that protection simply because it was first created as a feature of the design of a useful article, even if it makes that article more useful. This has been the rule since *Mazer*, and it is consistent with the statute's explicit protection of "applied art." In rejecting petitioner's view, the Court necessarily abandons the distinction between "physical" and "conceptual" separability adopted by some courts and commentators. Pp. 12–15.

(2) Petitioner also suggests incorporating two "objective" com-

Syllabus

ponents into the test—one requiring consideration of evidence of the creator's design methods, purposes, and reasons, and one looking to the feature's marketability. The Court declines to incorporate these components because neither is grounded in the statute's text. Pp. 15–16.

(3) Finally, petitioner claims that protecting surface decorations is inconsistent with Congress' intent to entirely exclude industrial design from copyright. But Congress has given limited copyright protection to certain features of industrial design. Approaching the statute with presumptive hostility toward protection for industrial design would undermine that choice. In any event, the test adopted here does not render the underlying uniform eligible for copyright protection. Pp. 16–17.

799 F. 3d 468, affirmed.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and ALITO, SOTOMAYOR, and KAGAN, JJ., joined. GINSBURG, J., filed an opinion concurring in the judgment. BREYER, J., filed a dissenting opinion, in which KENNEDY, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 15–866

STAR ATHLETICA, L. L. C., PETITIONER *v.* VARSITY
BRANDS, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[March 22, 2017]

JUSTICE THOMAS delivered the opinion of the Court.

Congress has provided copyright protection for original
works of art, but not for industrial designs. The line
between art and industrial design, however, is often diffi-
cult to draw. This is particularly true when an industrial
design incorporates artistic elements. Congress has af-
forded limited protection for these artistic elements by
providing that "pictorial, graphic, or sculptural features"
of the "design of a useful article" are eligible for copyright
protection as artistic works if those features "can be iden-
tified separately from, and are capable of existing inde-
pendently of, the utilitarian aspects of the article." 17
U. S. C. §101.

We granted certiorari to resolve widespread disagree-
ment over the proper test for implementing §101's separate-
identification and independent-existence requirements.
578 U. S. \_\_\_ (2016). We hold that a feature incor-
porated into the design of a useful article is eligible for
copyright protection only if the feature (1) can be per-
ceived as a two- or three-dimensional work of art separate
from the useful article and (2) would qualify as a protecta-

ble pictorial, graphic, or sculptural work—either on its own or fixed in some other tangible medium of expression—if it were imagined separately from the useful article into which it is incorporated. Because that test is satisfied in this case, we affirm.

I

Respondents Varsity Brands, Inc., Varsity Spirit Corporation, and Varsity Spirit Fashions & Supplies, Inc., design, make, and sell cheerleading uniforms. Respondents have obtained or acquired more than 200 U. S. copyright registrations for two-dimensional designs appearing on the surface of their uniforms and other garments. These designs are primarily "combinations, positionings, and arrangements of elements" that include "chevrons . . . , lines, curves, stripes, angles, diagonals, inverted [chevrons], coloring, and shapes." App. 237. At issue in this case are Designs 299A, 299B, 074, 078, and 0815. See Appendix, *infra.*

Petitioner Star Athletica, L. L. C., also markets and sells cheerleading uniforms. Respondents sued petitioner for infringing their copyrights in the five designs. The District Court entered summary judgment for petitioner on respondents' copyright claims on the ground that the designs did not qualify as protectable pictorial, graphic, or sculptural works. It reasoned that the designs served the useful, or "utilitarian," function of identifying the garments as "cheerleading uniforms" and therefore could not be "physically or conceptually" separated under §101 "from the utilitarian function" of the uniform. 2014 WL 819422, *8–*9 (WD Tenn., Mar. 1, 2014).

The Court of Appeals for the Sixth Circuit reversed. 799 F. 3d 468, 471 (2015). In its view, the "graphic designs" were "separately identifiable" because the designs "and a blank cheerleading uniform can appear 'side by side'—one as a graphic design, and one as a cheerleading uniform."

*Id.,* at 491 (quoting Compendium of U. S. Copyright Office Practices §924.2(B) (3d ed. 2014) (Compendium)). And it determined that the designs were "'capable of existing independently'" because they could be incorporated onto the surface of different types of garments, or hung on the wall and framed as art. 799 F. 3d, at 491, 492.

Judge McKeague dissented. He would have held that, because "identifying the wearer as a cheerleader" is a utilitarian function of a cheerleading uniform and the surface designs were "integral to" achieving that function, the designs were inseparable from the uniforms. *Id.,* at 495–496.

## II

The first element of a copyright-infringement claim is "ownership of a valid copyright." *Feist Publications, Inc.* v. *Rural Telephone Service Co.*, 499 U. S. 340, 361 (1991). A valid copyright extends only to copyrightable subject matter. See 4 M. Nimmer & D. Nimmer, Copyright §13.01[A] (2010) (Nimmer). The Copyright Act of 1976 defines copyrightable subject matter as "original works of authorship fixed in any tangible medium of expression." 17 U. S. C. §102(a).

"Works of authorship" include "pictorial, graphic, and sculptural works," §102(a)(5), which the statute defines to include "two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans," §101. And a work of authorship is "'fixed' in a tangible medium of expression when it[ is] embodi[ed] in a" "material objec[t] . . . from which the work can be perceived, reproduced, or otherwise communicated." *Ibid.* (definitions of "fixed" and "copies").

The Copyright Act also establishes a special rule for copyrighting a pictorial, graphic, or sculptural work incor-

porated into a "useful article," which is defined as "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." *Ibid.* The statute does not protect useful articles as such. Rather, "the design of a useful article" is "considered a pictorial, graphical, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." *Ibid.*

Courts, the Copyright Office, and commentators have described the analysis undertaken to determine whether a feature can be separately identified from, and exist independently of, a useful article as "separability." In this case, our task is to determine whether the arrangements of lines, chevrons, and colorful shapes appearing on the surface of respondents' cheerleading uniforms are eligible for copyright protection as separable features of the design of those cheerleading uniforms.

## A

As an initial matter, we must address whether separability analysis is necessary in this case.

## 1

Respondents argue that "[s]eparability is only implicated when a [pictorial, graphic, or sculptural] work is the 'design of a useful article.'" Brief for Respondents 25. They contend that the surface decorations in this case are "two-dimensional graphic designs that appear *on* useful articles," but are not themselves designs *of* useful articles. *Id.,* at 52. Consequently, the surface decorations are protected two-dimensional works of graphic art without regard to any separability analysis under §101. *Ibid.*; see 2 W. Patry, Copyright §3:151, p. 3–485 (2016) (Patry)

("Courts looking at two-dimensional design claims should not apply the separability analysis regardless of the three-dimensional form that design is embodied in"). Under this theory, two-dimensional artistic features on the surface of useful articles are "inherently separable." Brief for Respondents 26.

This argument is inconsistent with the text of §101. The statute requires separability analysis for any "pictorial, graphic, or sculptural features" incorporated into the "design of a useful article." "Design" refers here to "the combination" of "details" or "features" that "go to make up" the useful article. 3 Oxford English Dictionary 244 (def. 7, first listing) (1933) (OED). Furthermore, the words "pictorial" and "graphic" include, in this context, two-dimensional features such as pictures, paintings, or drawings. See 4 *id.*, at 359 (defining "[g]raphic" to mean "[o]f or pertaining to drawing or painting"); 7 *id.,* at 830 (defining "[p]ictorial" to mean "of or pertaining to painting or drawing"). And the statute expressly defines "[p]ictorial, graphical, and sculptural works" to include "two-dimensional . . . works of . . . art." §101. The statute thus provides that the "design of a useful article" can include two-dimensional "pictorial" and "graphic" features, and separability analysis applies to those features just as it does to three-dimensional "sculptural" features.

2

The United States makes a related but distinct argument against applying separability analysis in this case, which respondents do not and have not advanced. As part of their copyright registrations for the designs in this case, respondents deposited with the Copyright Office drawings and photographs depicting the designs incorporated onto cheerleading uniforms. App. 213–219; Appendix, *infra.* The Government argues that, assuming the other statutory requirements were met, respondents obtained a copyright

in the deposited drawings and photographs and have simply reproduced those copyrighted works on the surface of a useful article, as they would have the exclusive right to do under the Copyright Act. See Brief for United States as *Amicus Curiae* 14–15, 17–22. Accordingly, the Government urges, separability analysis is unnecessary on the record in this case. We generally do not entertain arguments that were not raised below and that are not advanced in this Court by any party, *Burwell* v. *Hobby Lobby Stores, Inc.*, 573 U. S. ___, ___ (2014), because "[i]t is not the Court's usual practice to adjudicate either legal or predicate factual questions in the first instance," *CRST Van Expedited, Inc.* v. *EEOC*, 578 U. S. ___, ___ (2016) (slip op., at 16). We decline to depart from our usual practice here.

B

We must now decide when a feature incorporated into a useful article "can be identified separately from" and is "capable of existing independently of" "the utilitarian aspects" of the article. This is not a free-ranging search for the best copyright policy, but rather "depends solely on statutory interpretation." *Mazer* v. *Stein*, 347 U. S. 201, 214 (1954). "The controlling principle in this case is the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written." *Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U. S. 469, 476 (1992). We thus begin and end our inquiry with the text, giving each word its "ordinary, contemporary, common meaning." *Walters* v. *Metropolitan Ed. Enterprises, Inc.*, 519 U. S. 202, 207 (1997) (internal quotation marks omitted). We do not, however, limit this inquiry to the text of §101 in isolation. "[I]nterpretation of a phrase of uncertain reach is not confined to a single sentence when the text of the whole statute gives instruction as to its meaning." *Maracich* v. *Spears*, 570 U. S. ___, ___ (2013) (slip op., at 15).

We thus "look to the provisions of the whole law" to determine §101's meaning. *United States* v. *Heirs of Boisdoré*, 8 How. 113, 122 (1849).

1

The statute provides that a "pictorial, graphic, or sculptural featur[e]" incorporated into the "design of a useful article" is eligible for copyright protection if it (1) "can be identified separately from," and (2) is "capable of existing independently of, the utilitarian aspects of the article." §101. The first requirement—separate identification—is not onerous. The decisionmaker need only be able to look at the useful article and spot some two- or three-dimensional element that appears to have pictorial, graphic, or sculptural qualities. See 2 Patry §3:146, at 3–474 to 3–475.

The independent-existence requirement is ordinarily more difficult to satisfy. The decisionmaker must determine that the separately identified feature has the capacity to exist apart from the utilitarian aspects of the article. See 2 OED 88 (def. 5) (defining "[c]apable" of as "[h]aving the needful capacity, power, or fitness for"). In other words, the feature must be able to exist as its own pictorial, graphic, or sculptural work as defined in §101 once it is imagined apart from the useful article. If the feature is not capable of existing as a pictorial, graphic, or sculptural work once separated from the useful article, then it was not a pictorial, graphic, or sculptural feature of that article, but rather one of its utilitarian aspects.

Of course, to qualify as a pictorial, graphic, or sculptural work on its own, the feature cannot itself be a useful article or "[a]n article that is normally a part of a useful article" (which is itself considered a useful article). §101. Nor could someone claim a copyright in a useful article merely by creating a replica of that article in some other medium—for example, a cardboard model of a car. Al-

though the replica could itself be copyrightable, it would not give rise to any rights in the useful article that inspired it.

2

The statute as a whole confirms our interpretation. The Copyright Act provides "the owner of [a] copyright" with the "exclusive righ[t] . . . to reproduce the copyrighted work in copies." §106(1). The statute clarifies that this right "includes the right to reproduce the [copyrighted] work in or on any kind of article, whether useful or otherwise." §113(a). Section 101 is, in essence, the mirror image of §113(a). Whereas §113(a) protects a work of authorship first fixed in some tangible medium other than a useful article and subsequently applied to a useful article, §101 protects art first fixed in the medium of a useful article. The two provisions make clear that copyright protection extends to pictorial, graphic, and sculptural works regardless of whether they were created as freestanding art or as features of useful articles. The ultimate separability question, then, is whether the feature for which copyright protection is claimed would have been eligible for copyright protection as a pictorial, graphic, or sculptural work had it originally been fixed in some tangible medium other than a useful article before being applied to a useful article.

3

This interpretation is also consistent with the history of the Copyright Act. In *Mazer*, a case decided under the 1909 Copyright Act, the respondents copyrighted a statuette depicting a dancer. The statuette was intended for use as a lamp base, "with electric wiring, sockets and lamp shades attached." 347 U. S., at 202. Copies of the statuette were sold both as lamp bases and separately as statuettes. *Id.,* at 203. The petitioners copied the statuette and

sold lamps with the statuette as the base. They defended against the respondents' infringement suit by arguing that the respondents did not have a copyright in a statuette intended for use as a lamp base. *Id.,* at 204–205.

Two of *Mazer*'s holdings are relevant here. First, the Court held that the respondents owned a copyright in the statuette even though it was intended for use as a lamp base. See *id.,* at 214. In doing so, the Court approved the Copyright Office's regulation extending copyright protection to works of art that might also serve a useful purpose. See *ibid.* (approving 37 CFR §202.8(a) (1949) (protecting "works of artistic craftsmanship, in so far as their form but not their mechanical or utilitarian aspects are concerned")).

Second, the Court held that it was irrelevant to the copyright inquiry whether the statuette was initially created as a freestanding sculpture or as a lamp base. 347 U. S., at 218–219 ("Nor do we think the subsequent registration of a work of art published as an element in a manufactured article, is a misuse of copyright. This is not different from the registration of a statuette and its later embodiment in an industrial article"). *Mazer* thus interpreted the 1909 Act consistently with the rule discussed above: If a design would have been copyrightable as a standalone pictorial, graphic, or sculptural work, it is copyrightable if created first as part of a useful article.

Shortly thereafter, the Copyright Office enacted a regulation implementing the holdings of *Mazer*. See 1 Nimmer §2A.08[B][1][b] (2016). As amended, the regulation introduced the modern separability test to copyright law:

> "If the sole intrinsic function of an article is its utility, the fact that the article is unique and attractively shaped will not qualify it as a work of art. However, if the shape of a utilitarian article incorporates features, such as artistic sculpture, carving, or pictorial repre-

sentation, which can be identified separately and are capable of existing independently as a work of art, such features will be eligible for registration." 37 CFR §202.10(c) (1960) (punctuation altered).

Congress essentially lifted the language governing protection for the design of a useful article directly from the post-*Mazer* regulations and placed it into §101 of the 1976 Act. Consistent with *Mazer*, the approach we outline today interprets §§101 and 113 in a way that would afford copyright protection to the statuette in *Mazer* regardless of whether it was first created as a standalone sculptural work or as the base of the lamp. See 347 U. S., at 218–219.

C

In sum, a feature of the design of a useful article is eligible for copyright if, when identified and imagined apart from the useful article, it would qualify as a pictorial, graphic, or sculptural work either on its own or when fixed in some other tangible medium.

Applying this test to the surface decorations on the cheerleading uniforms is straightforward. First, one can identify the decorations as features having pictorial, graphic, or sculptural qualities. Second, if the arrangement of colors, shapes, stripes, and chevrons on the surface of the cheerleading uniforms were separated from the uniform and applied in another medium—for example, on a painter's canvas—they would qualify as "two-dimensional . . . works of . . . art," §101. And imaginatively removing the surface decorations from the uniforms and applying them in another medium would not replicate the uniform itself. Indeed, respondents have applied the designs in this case to other media of expression—different types of clothing—without replicating the uniform. See App. 273–279. The decorations are therefore separable from the

uniforms and eligible for copyright protection.[1]

The dissent argues that the designs are not separable because imaginatively removing them from the uniforms and placing them in some other medium of expression—a canvas, for example—would create "pictures of cheerleader uniforms." *Post,* at 10 (opinion of BREYER, J.). Petitioner similarly argues that the decorations cannot be copyrighted because, even when extracted from the useful article, they retain the outline of a cheerleading uniform. Brief for Petitioner 48–49.

This is not a bar to copyright. Just as two-dimensional fine art corresponds to the shape of the canvas on which it is painted, two-dimensional applied art correlates to the contours of the article on which it is applied. A fresco painted on a wall, ceiling panel, or dome would not lose copyright protection, for example, simply because it was designed to track the dimensions of the surface on which it was painted. Or consider, for example, a design etched or painted on the surface of a guitar. If that entire design is imaginatively removed from the guitar's surface and placed on an album cover, it would still resemble the shape of a guitar. But the image on the cover does not "replicate" the guitar as a useful article. Rather, the design is a two-dimensional work of art that corresponds to the shape of the useful article to which it was applied. The statute protects that work of art whether it is first drawn on the album cover and then applied to the guitar's surface, or vice versa. Failing to protect that art would create an anomaly: It would extend protection to two-dimensional designs that cover a part of a useful article but would not protect the same design if it covered the

––––––––
[1] We do not today hold that the surface decorations are copyrightable. We express no opinion on whether these works are sufficiently original to qualify for copyright protection, see *Feist Publications*, *Inc.* v. *Rural Telephone Service Co.*, 499 U. S. 340, 358–359 (1991), or on whether any other prerequisite of a valid copyright has been satisfied.

entire article. The statute does not support that distinction, nor can it be reconciled with the dissent's recognition that "artwork printed on a t-shirt" could be protected. *Post,* at 4 (internal quotation marks omitted).

To be clear, the only feature of the cheerleading uniform eligible for a copyright in this case is the two-dimensional work of art fixed in the tangible medium of the uniform fabric. Even if respondents ultimately succeed in establishing a valid copyright in the surface decorations at issue here, respondents have no right to prohibit any person from manufacturing a cheerleading uniform of identical shape, cut, and dimensions to the ones on which the decorations in this case appear. They may prohibit only the reproduction of the surface designs in any tangible medium of expression—a uniform or otherwise.[2]

## D

Petitioner and the Government raise several objections to the approach we announce today. None is meritorious.

### 1

Petitioner first argues that our reading of the statute is missing an important step. It contends that a feature may exist independently only if it can stand alone as a copyrightable work *and* if the useful article from which it was extracted would remain equally useful. In other words,

---

[2] The dissent suggests that our test would lead to the copyrighting of shovels. *Post,* at 7; Appendix to opinion of BREYER, J., fig. 4, *post*. But a shovel, like a cheerleading uniform, even if displayed in an art gallery, is "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U. S. C. §101. It therefore cannot be copyrighted. A drawing of a shovel could, of course, be copyrighted. And, if the shovel included any artistic features that could be perceived as art apart from the shovel, and which would qualify as protectable pictorial, graphic, or sculptural works on their own or in another medium, they too could be copyrighted. But a shovel as a shovel cannot.

copyright extends only to "solely artistic" features of useful articles. Brief for Petitioner 33. According to petitioner, if a feature of a useful article "advance[s] the utility of the article," *id.,* at 38, then it is categorically beyond the scope of copyright, *id.*, at 33. The designs here are not protected, it argues, because they are necessary to two of the uniforms' "inherent, essential, or natural functions"—identifying the wearer as a cheerleader and enhancing the wearer's physical appearance. *Id.*, at 38, 48; Reply Brief 2, 16. Because the uniforms would not be equally useful without the designs, petitioner contends that the designs are inseparable from the "utilitarian aspects" of the uniform. Brief for Petitioner 50.

The Government raises a similar argument, although it reaches a different result. It suggests that the appropriate test is whether the useful article with the artistic feature removed would "remai[n] *similarly* useful." Brief for United States as *Amicus Curiae* 29 (emphasis added). In the view of the United States, however, a plain white cheerleading uniform is "similarly useful" to uniforms with respondents' designs. *Id.,* at 27–28.

The debate over the relative utility of a plain white cheerleading uniform is unnecessary. The focus of the separability inquiry is on the extracted feature and not on any aspects of the useful article that remain after the imaginary extraction. The statute does not require the decisionmaker to imagine a fully functioning useful article without the artistic feature. Instead, it requires that the separated feature qualify as a nonuseful pictorial, graphic, or sculptural work on its own.

Of course, because the removed feature may not be a useful article—as it would then not qualify as a pictorial, graphic, or sculptural work—there necessarily would be some aspects of the original useful article "left behind" if the feature were conceptually removed. But the statute does not require the imagined remainder to be a fully

functioning useful article at all, much less an equally useful one. Indeed, such a requirement would deprive the *Mazer* statuette of protection had it been created first as a lamp base rather than as a statuette. Without the base, the "lamp" would be just a shade, bulb, and wires. The statute does not require that we imagine a nonartistic replacement for the removed feature to determine whether that *feature* is capable of an independent existence.

Petitioner's argument follows from its flawed view that the statute protects only "solely artistic" features that have no effect whatsoever on a useful article's utilitarian function. This view is inconsistent with the statutory text. The statute expressly protects two- and three-dimensional "applied art." §101. "Applied art" is art "employed in the decoration, design, or execution of useful objects," Webster's Third New International Dictionary 105 (1976) (emphasis added), or "those arts or crafts that have a *primarily utilitarian function*, or . . . the designs and decorations used in these arts," Random House Dictionary 73 (1966) (emphasis added); see also 1 OED 576 (2d ed. 1989) (defining "applied" as "[p]ut to practical use"). An artistic feature that would be eligible for copyright protection on its own cannot lose that protection simply because it was first created as a feature of the design of a useful article, even if it makes that article more useful.

Indeed, this has been the rule since *Mazer*. In holding that the statuette was protected, the Court emphasized that the 1909 Act abandoned any "distinctions between purely aesthetic articles and useful works of art." 347 U. S., at 211. Congress did not enact such a distinction in the 1976 Act. Were we to accept petitioner's argument that the only protectable features are those that play absolutely no role in an article's function, we would effectively abrogate the rule of *Mazer* and read "applied art" out of the statute.

Because we reject the view that a useful article must

remain after the artistic feature has been imaginatively separated from the article, we necessarily abandon the distinction between "physical" and "conceptual" separability, which some courts and commentators have adopted based on the Copyright Act's legislative history. See H. R. Rep. No. 94–1476, p. 55 (1976). According to this view, a feature is *physically* separable from the underlying useful article if it can "be physically separated from the article by ordinary means while leaving the utilitarian aspects of the article completely intact." Compendium §924.2(A); see also *Chosun Int'l, Inc.* v. *Chrisha Creations, Ltd.*, 413 F. 3d 324, 329 (CA2 2005). *Conceptual* separability applies if the feature physically could not be removed from the useful article by ordinary means. See Compendium §924.2(B); but see 1 P. Goldstein, Copyright §2.5.3, p. 2:77 (3d ed. 2016) (explaining that the lower courts have been unable to agree on a single conceptual separability test); 2 Patry §§3:140–3:144.40 (surveying the various approaches in the lower courts).

The statutory text indicates that separability is a conceptual undertaking. Because separability does not require the underlying useful article to remain, the physical-conceptual distinction is unnecessary.

2

Petitioner next argues that we should incorporate two "objective" components, Reply Brief 9, into our test to provide guidance to the lower courts: (1) "whether the design elements can be identified as reflecting the designer's artistic judgment exercised independently of functional influence," Brief for Petitioner 34 (emphasis deleted and internal quotation marks omitted), and (2) whether "there is [a] substantial likelihood that the pictorial, graphic, or sculptural feature would still be marketable to some significant segment of the community without its utilitarian function," *id.,* at 35 (emphasis deleted and internal quota-

tion marks omitted).

We reject this argument because neither consideration is grounded in the text of the statute. The first would require the decisionmaker to consider evidence of the creator's design methods, purposes, and reasons. *Id.,* at 48. The statute's text makes clear, however, that our inquiry is limited to how the article and feature are perceived, not how or why they were designed. See *Brandir Int'l, Inc.* v. *Cascade Pacific Lumber Co.*, 834 F. 2d 1142, 1152 (CA2 1987) (Winter, J., concurring in part and dissenting in part) (The statute "expressly states that the legal test is how the final article is perceived, not how it was developed through various stages").

The same is true of marketability. Nothing in the statute suggests that copyrightability depends on market surveys. Moreover, asking whether some segment of the market would be interested in a given work threatens to prize popular art over other forms, or to substitute judicial aesthetic preferences for the policy choices embodied in the Copyright Act. See *Bleistein* v. *Donaldson Lithographing Co.*, 188 U. S. 239, 251 (1903) ("It would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits").

3

Finally, petitioner argues that allowing the surface decorations to qualify as a "work of authorship" is inconsistent with Congress' intent to entirely exclude industrial design from copyright. Petitioner notes that Congress refused to pass a provision that would have provided limited copyright protection for industrial designs, including clothing, when it enacted the 1976 Act, see *id.,* at 9–11 (citing S. 22, Tit. II, 94th Cong., 2d Sess., 122 Cong. Rec. 3856–3859 (1976)), and that it has enacted laws protecting

designs for specific useful articles—semiconductor chips and boat hulls, see 17 U. S. C. §§901–914, 1301–1332—while declining to enact other industrial design statutes, Brief for Petitioner 29, 43. From this history of failed legislation petitioner reasons that Congress intends to channel intellectual property claims for industrial design into design patents. It therefore urges us to approach this question with a presumption against copyrightability. *Id.,* at 27.

We do not share petitioner's concern. As an initial matter, "[c]ongressional inaction lacks persuasive significance" in most circumstances. *Pension Benefit Guaranty Corporation* v. *LTV Corp.*, 496 U. S. 633, 650 (1990) (internal quotation marks omitted). Moreover, we have long held that design patent and copyright are not mutually exclusive. See *Mazer*, 347 U. S., at 217. Congress has provided for limited copyright protection for certain features of industrial design, and approaching the statute with presumptive hostility toward protection for industrial design would undermine Congress' choice. In any event, as explained above, our test does not render the shape, cut, and physical dimensions of the cheerleading uniforms eligible for copyright protection.

## III

We hold that an artistic feature of the design of a useful article is eligible for copyright protection if the feature (1) can be perceived as a two- or three-dimensional work of art separate from the useful article and (2) would qualify as a protectable pictorial, graphic, or sculptural work either on its own or in some other medium if imagined separately from the useful article. Because the designs on the surface of respondents' cheerleading uniforms in this case satisfy these requirements, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*

APPENDIX TO OPINION OF THE COURT



Design 299A

Design 299B

Design 074

Design 078

Design 0815

# SUPREME COURT OF THE UNITED STATES

_____

No. 15–866

_____

## STAR ATHLETICA, L. L. C., PETITIONER *v.* VARSITY BRANDS, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[March 22, 2017]

JUSTICE GINSBURG, concurring in the judgment.

I concur in the Court's judgment but not in its opinion. Unlike the majority, I would not take up in this case the separability test appropriate under 17 U. S. C. §101.[1] Consideration of that test is unwarranted because the designs at issue are not designs *of* useful articles. Instead, the designs are themselves copyrightable pictorial or graphic works *reproduced on* useful articles.[2]

_____

[1] Courts "have struggled mightily to formulate a test" for the separability analysis. 799 F. 3d 468, 484 (CA6 2015); see 2 W. Patry, Copyright §3:136, p. 3–420 (2016) (noting "widespread interpretative disarray" over the separability test); Ginsburg, "Courts Have Twisted Themselves into Knots": U. S. Copyright Protection for Applied Art, 40 Colum. J. L. & Arts 1, 2 (2016) ("The 'separability' test . . . has resisted coherent application . . . ."); 1 M. Nimmer & D. Nimmer, Copyright §2A.08[B][6], p. 2A–84 (2016) (separability is a "perennially tangled aspect of copyright doctrine").

[2] Like the Court, I express no opinion on whether the designs otherwise meet the requirements for copyrightable subject matter. See *ante*, at 11, n. 1; 17 U. S. C. §102(a) ("Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated."). In view of the dissent's assertion that Varsity's designs are "plainly unoriginal," *post*, at 11, however, I note this Court's recognition that "the requisite level of creativity [for copyrightability] is extremely low; even a slight amount will suffice," *Feist Publications, Inc.* v. *Rural*

GINSBURG, J., concurring in judgment

A pictorial, graphic, or sculptural work (PGS work) is copyrightable. §102(a)(5). PGS works include "two-dimensional and three-dimensional works of fine, graphic, and applied art." §101. Key to this case, a copyright in a standalone PGS work "includes the right to reproduce the work in or on any kind of article, whether useful or otherwise." §113(a). Because the owner of a copyright in a pre-existing PGS work may exclude a would-be infringer from reproducing that work on a useful article, there is no need to engage in any separability inquiry to resolve the instant petition.

The designs here in controversy are standalone pictorial and graphic works that respondents Varsity Brands, Inc., et al. (Varsity) reproduce on cheerleading uniforms. Varsity's designs first appeared as pictorial and graphic works that Varsity's design team sketched on paper. App. 281. Varsity then sought copyright protection for those two-dimensional designs, not for cheerleading costumes; its registration statements claimed "2-Dimensional artwork" and "fabric design (artwork)." Appendix, *infra*, at 4–7, 9–10, 12–14. Varsity next reproduced its two-dimensional graphic designs on cheerleading uniforms, also on other garments, including T-shirts and jackets. See, *e.g.*, App. 274, 276.[3]

———————

*Telephone Service Co.*, 499 U. S. 340, 345 (1991); see *Atari Games Corp.* v. *Oman*, 979 F. 2d 242 (CADC 1992).

[3] That Varsity's designs can be placed on jackets or T-shirts without replicating a cheerleader's uniform supports their qualification as fabric designs. The dissent acknowledges that fabric designs are copyrightable, but maintains that Varsity's designs do not count because Varsity's submissions depict clothing, not fabric designs. *Post*, at 10–11. But registrants claiming copyrightable designs may submit drawings or photos of those designs as they appear on useful articles. See Compendium of U. S. Copyright Office Practices §1506 (3d ed. 2014) ("To register a copyrightable design that has been applied to the back of a useful article, such as a chair, the applicant may submit drawings of the design as it appears on the chair[.]"), online at

In short, Varsity's designs are not themselves useful articles meet for separability determination under §101; they are standalone PGS works that may gain copyright protection as such, including the exclusive right to reproduce the designs on useful articles.[4]

---

https://www.copyright.gov/comp3/docs/compendium.pdf (as last visited Mar. 8, 2017). And, as noted in text, Varsity's registration statements claimed "2-Dimensional artwork" and "fabric design (artwork)." Appendix, *infra*, at 4–7, 9–10, 12–14.

The dissent also acknowledges that artwork printed on a T-shirt is copyrightable. *Post*, at 4. Varsity's colored shapes and patterns can be, and indeed are, printed on T-shirts. See, *e.g.*, App. 274. Assuming Varsity's designs meet the other requirements for copyrightable subject matter, they would fit comfortably within the Copyright Office guidance featured by the dissent. See *post*, at 4 (citing Compendium of U. S. Copyright Office Practices, *supra*, §924.2(B).

[4]The majority declines to address this route to decision because, it says, Varsity has not advanced it. *Ante*, at 5–6. I read Varsity's brief differently. See Brief for Respondents 25 (explaining that the Copyright Act "expressly provides that PGS designs do not lose their protection when they appear 'in or on' a useful article," quoting §113(a)); *id.*, at 52 (disclaiming the need for separability analysis because the designs are themselves PGS works).

## APPENDIX

### EXHIBIT 15

Certificate of Registration
Additional      certificate
(17 U.S.C. 706)

[Seal of the United States Copyright Office 1870]

This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

Form VA

For a Work of the Visual Arts

UNITED      STATES
COPYRIGHT OFFICE

RE VA 1-417-427

EFFECTIVE      DATE
OF REGISTRATION

__5__   __21__   __07__
Month Day Year

Maria A. Pallante

Acting Register of Copyrights, United States of America

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

**1 Title of This Work**
Design Number 078

NATURE    OF    THIS
**WORK**   See instructions
2-dimensional artwork   ⬅

**Previous or Alternative Titles**

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. **Title of Collective Work**

If published in a periodical or serial give:
**Volume Number     Issue Date   On Pages**

2 NOTE   Under the law the "author" of a "**work made for hire**" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

a **NAME OF AUTHOR**
Varsity Brands, Inc.

**DATES OF BIRTH AND DEATH**
Year Born                    Year Died

**Was this contribution to the work a "work made for hire"?** ☒ Yes ☐ No

**Author's Nationality or Domicile**
Name of Country
      Citizen of _____
**or**
      Domiciled in   United States

**Was this Author's Contribution to the Work**
Anonymous?          ☐ Yes ☒ No
Pseudonymous?      ☐ Yes ☒ No

If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship**   Check appropriate box(es)
**See Instructions**
☐ 3-Dimensional sculpture
☒ 2-Dimensional artwork                    ←

## EXHIBIT 16

| | |
|---|---|
| Certificate of Registration Additional certificate (17 U.S.C. 706) | **Registration Number:** VA 1-675-905 |

[Seal of the United States Copyright Office 1870]

This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

**Effective date of registration:** May 12, 2008

Maria A. Pallante Acting Register of Copyrights, United States of America

Title _____

     **Title of Work**: 0815

     **Nature of Work**: 2-dimensional artwork ←

Completion/Publication _____

     **Year of Completion**: 2007

     **Date of 1st Publication**: January 2, 2008

     **Nation of 1st Publication**: United States

Author _____

     **Author**: Varsity Brands, Inc.

     **Author Created**: 2-dimensional artwork ←

     **Work made for hire**: Yes

     **Domiciled in**: United States

     **Anonymous**: No

     **Pseudonymous**: No

Copyright claimant _____

     **Copyright Claimant**: Varsity Brands, Inc.

## EXHIBIT 17

Certificate of Registration Additional certificate (17 U.S.C. 706) [Seal of the United States Copyright Office 1870]

This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

Form                    VA
For a Work of the Visual                    Arts
UNITED          STATES
COPYRIGHT OFFICE
RE VA        1-319-228
EFFECTIVE        DATE
OF    REGISTRATION
April    29    2005
Month Day    Year

Maria    A.    Pallante
Acting    Register    of
Copyrights,    United
States of America

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

1 **Title of This Work**

299A

NATURE    OF    THIS **WORK**  See instructions

FABRIC DESIGN (ARTWORK)



**Previous or Alternative Titles**

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. **Title of Collective Work**

If published in a periodical or serial give:
**Volume  Number     Issue Date  On Pages**

2 NOTE   Under the law the "author" of a **work made for hire**" is generally the employer not the employee (see instructions)  For any part of this work that was *made for hire* check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part and leave the space for dates of birth and death blank.

a **NAME OF AUTHOR**
VARSITY SPIRIT FASHIONS & SUPPLIES INC

**DATES OF BIRTH AND DEATH**
Year Born                    Year Died

_____          _____

**Was this contribution to the work a "work made for hire"?** ☒ Yes ☐ No
**Author's Nationality or Domicile**
Name of Country
      Citizen of _____
**or**
      Domiciled in   United States

**Was this Author's Contribution to the Work**

Anonymous?         ☐ Yes ☒ No
Pseudonymous?      ☐ Yes ☒ No

If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship**   Check appropriate box(es)
**See Instructions**

☐  3 Dimensional sculpture

☒ 2 Dimensional artwork          ⬅

☐ Reproduction of work of art

☐ Map

☐ Photograph

☐ Jewelry design

☐ Technical drawing

☐ Text

☐ Architectural work

b **Name of Author**

_____

**Dates of Birth and Death**
Year Born                    Year Died

_____          _____

**Was this contribution to the work a "work made for hire"?** ☐ Yes ☐ No

**Author's Nationality or Domicile**
Name of Country
          Citizen of _____
**or**
          Domiciled at _____

**Was this Author's Contribution to the Work**

Anonymous?          ☐ Yes ☐ No
Pseudonymous?        ☐ Yes ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship** Check appropriate box(es) **See Instructions**

☐ 3 Dimensional sculpture

Appendix to opinion of GINSBURG, J.

## EXHIBIT 18

Certificate of Registration Additional certificate (17 U.S.C. 706)

[Seal of the United States Copyright Office 1870]

This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

Form                    VA
For a Work of the Visual              Arts
UNITED        STATES
COPYRIGHT OFFICE

RE VA          1-319-226
EFFECTIVE        DATE
OF    REGISTRATION
Month    Day    Year
April    29    2005

Maria    A.    Pallante
Acting    Register    of
Copyrights,    United
States of America

## DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

1 **Title of This Work**
299B

**NATURE    OF    THIS WORK**  See instructions
FABRIC DESIGN
(ARTWORK)

**Previous or Alternative Titles**

**Publication as a Contribution**  If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.

**Title of Collective Work**

_____

If published in a periodical or serial give: **Volume Number    Issue Date   On Pages**

_____

2 NOTE   Under the law the "author" of a **"work made for hire"** is generally the employer not the employee (see Instructions)   For any part of this work that was made for hire, check Yes in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part and leave the space for dates of birth and death blank.

a **NAME OF AUTHOR**
VARSITY SPIRIT FASHIONS & SUPPLIES INC

**DATES OF BIRTH AND DEATH**
Year Born                     Year Died

_____          _____

**Was this contribution to the work a "work made for hire"?** ☒ Yes ☐ No

**Author's Nationality or Domicile**
Name of Country
       Citizen of _____
**or**
       Domiciled in __USA_____

**Was this Author's Contribution to the Work:**
Anonymous?              ☐ Yes ☒ No
Pseudonymous?          ☐ Yes ☒ No

If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship**   Check appropriate box(es)
**See Instructions**

☐ 3 Dimensional sculpture

☒ 2 Dimensional artwork          ⬅

☐ Reproduction of work of art

☐ Map

☐ Photograph

☐ Jewelry design

☐ Technical drawing

☐ Text

☐ Architectural work

_____

b **Name of Author**

_____

**Dates of Birth and Death**
Year Born                    Year Died

_____        _____

**Was this contribution to the work a "work made for hire"?** ☐ Yes ☐ No

**Author's Nationality or Domicile**
Name of Country
      Citizen of _____
**or**
      Domiciled in _____

**Was this Author's Contribution to the Work**
Anonymous?          ☐ Yes ☐ No
Pseudonymous?      ☐ Yes ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship**    Check appropriate box(es)
**See Instructions**

## AMENDED EXHIBIT 19

Certificate of Registration [Seal of the United States Copyright Office 1870]

This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

[Marybeth Peters] Register of Copyrights, United States of America

Form VA

For a Work of the Visual Arts

UNITED STATES COPYRIGHT OFFICE

RE VA 1-411-535

[BARCODE]

EFFECTIVE DATE OF REGISTRATION

  May  09  2007
Month Day Year

RATE CONTINUATION SHEET:

---

**1 Title of This Work**

Design Number 074

**NATURE OF THIS WORK**  See instructions

2-dimensional artwork ◀━━

**Previous or Alternative Titles**

---

**Publication as a Contribution**  If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.  Title of Collective Work

---

**If published in a periodical or serial give:**
**Volume    Number    Issue Date    On Pages**

**2 NOTE** Under the law the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the "work" was prepared) as "Author" of that part and leave the space for dates of birth and death blank

**a NAME OF AUTHOR**
Varsity Brands, Inc.

**DATES OF BIRTH AND DEATH**
Year Born                    Year Died

_____        _____

**Was this contribution to the work a "work made for hire"?** ☒ Yes ☐ No

**Author & Nationality or Domicile**
**Name of Country**
    Citizen of _____
**or**
    Domiciled at __United States__

**Was this Author a Contribution to the Work**
Anonymous?            ☐ Yes ☒ No
Pseudonymous?        ☐ Yes ☒ No

If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship**    Check appropriate box(es)
**See Instructions**

☐ 3 Dimensional sculpture

☒ 2 Dimensional artwork    ⬅

☐ Reproduction of work of art

# SUPREME COURT OF THE UNITED STATES

_____

No. 15–866

_____

## STAR ATHLETICA, L. L. C., PETITIONER *v.* VARSITY BRANDS, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[March 22, 2017]

JUSTICE BREYER, with whom JUSTICE KENNEDY joins, dissenting.

I agree with much in the Court's opinion. But I do not agree that the designs that Varsity Brands, Inc., submitted to the Copyright Office are eligible for copyright protection. Even applying the majority's test, the designs *cannot* "be perceived as . . . two- or three-dimensional work[s] of art separate from the useful article." *Ante,* at 1.

Look at the designs that Varsity submitted to the Copyright Office. See Appendix to opinion of the Court, *ante*. You will see only pictures of cheerleader uniforms. And cheerleader uniforms are useful articles. A picture of the relevant design features, whether separately "perceived" on paper or in the imagination, is a picture of, and thereby "replicate[s]," the underlying useful article of which they are a part. *Ante,* at 1, 10. Hence the design features that Varsity seeks to protect are not "capable of existing independently o[f] the utilitarian aspects of the article." 17 U. S. C. §101.

I

The relevant statutory provision says that the "design of a useful article" is copyrightable "only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from,

and are capable of existing independently of, the utilitarian aspects of the article." *Ibid.* But what, we must ask, do the words "identified separately" mean? Just when is a design separate from the "utilitarian aspect of the [useful] article?" The most direct, helpful aspect of the Court's opinion answers this question by stating:

> "Nor could someone claim a copyright in a useful article merely by creating a replica of that article in some other medium—for example, a cardboard model of a car. Although the replica could itself be copyrightable, it would not give rise to any rights in the useful article that inspired it." *Ante,* at 7–8.

Exactly so. These words help explain the Court's statement that a copyrightable work of art must be "perceived as a two- or three-dimensional work of art separate from the useful article." *Ante,* at 1, 17. They help clarify the concept of separateness. Cf. 1 M. Nimmer & D. Nimmer, Nimmer on Copyright §2A.08[A][1] (2016) (Nimmer) (describing courts' difficulty in applying that concept). They are consistent with Congress' own expressed intent. 17 U. S. C. §101; H. R. Rep. No. 94–1476, pp. 55, 105 (1976) (H. R. Rep.). And they reflect long held views of the Copyright Office. See Compendium of U. S. Copyright Office Practices §924.2(B) (3d ed. 2014), online at http://www.copyright.gov/comp3/docs/compendium.pdf (as last visited Mar. 7, 2017) (Compendium).

Consider, for example, the explanation that the House Report for the Copyright Act of 1976 provides. It says:

> "Unless the shape of an automobile, airplane, ladies' dress, food processor, television set, or any other industrial product contains some element that, *physically or conceptually*, can be identified as separable from the utilitarian aspects of that article, the design would not be copyrighted . . . ." H. R. Rep., at 55 (emphasis added).

These words suggest two exercises, one physical, one mental. Can the design features (the picture, the graphic, the sculpture) be physically removed from the article (and considered separately), all the while leaving the fully functioning utilitarian object in place? If not, can one nonetheless conceive of the design features separately without replicating a picture of the utilitarian object? If the answer to either of these questions is "yes," then the design is eligible for copyright protection. Otherwise, it is not. The abstract nature of these questions makes them sound difficult to apply. But with the Court's words in mind, the difficulty tends to disappear.

An example will help. Imagine a lamp with a circular marble base, a vertical 10-inch tall brass rod (containing wires) inserted off center on the base, a light bulb fixture emerging from the top of the brass rod, and a lampshade sitting on top. In front of the brass rod a porcelain Siamese cat sits on the base facing outward. Obviously, the Siamese cat is *physically separate* from the lamp, as it could be easily removed while leaving both cat and lamp intact. And, assuming it otherwise qualifies, the designed cat is eligible for copyright protection.

Now suppose there is no long brass rod; instead the cat sits in the middle of the base and the wires run up through the cat to the bulbs. The cat is not physically separate from the lamp, as the reality of the lamp's construction is such that an effort to physically separate the cat and lamp will destroy both cat and lamp. The two are integrated into a single functional object, like the similar configuration of the ballet dancer statuettes that formed the lamp bases at issue in *Mazer* v. *Stein*, 347 U. S. 201 (1954). But we can easily imagine the cat on its own, as did Congress when conceptualizing the ballet dancer. See H. R. Rep., at 55 (the statuette in *Mazer* was "incorporated into a product without losing its ability to exist independently as a work of art"). In doing so, we do not create

a mental picture of a lamp (or, in the Court's words, a
"replica" of the lamp), which is a useful article. We simply
perceive the cat separately, as a small cat figurine that
could be a copyrightable design work standing alone that
does not replicate the lamp. Hence the cat is *conceptually
separate* from the utilitarian article that is the lamp. The
pair of lamps pictured at Figures 1 and 2 in the Appendix
to this opinion illustrate this principle.

Case law, particularly case law that Congress and the
Copyright Office have considered, reflects the same ap-
proach. Congress cited examples of copyrightable design
works, including "a carving on the back of a chair" and "a
floral relief design on silver flatware." H. R. Rep., at 55.
Copyright Office guidance on copyrightable designs in
useful articles include "an engraving on a vase," "[a]rtwork
printed on a t-shirt," "[a] colorful pattern decorating the
surface of a shopping bag," "[a] drawing on the surface of
wallpaper," and "[a] floral relief decorating the handle of a
spoon." Compendium §924.2(B). Courts have found copy-
rightable matter in a plaster ballet dancer statuette encas-
ing the lamp's electric cords and forming its base, see
*Mazer, supra,* as well as carvings engraved onto furniture,
see *Universal Furniture Int'l, Inc.* v. *Collezione Europa
USA, Inc.,* 618 F. 3d 417, 431–435 (CA4 2010) (*per curiam*),
and designs on laminated floor tiles, see *Home Leg-
end, LLC* v. *Mannington Mills, Inc.,* 784 F. 3d 1404, 1412–
1413 (CA11 2015). See generally Brief for Intellectual
Property Professors as *Amici Curiae.*

By way of contrast, Van Gogh's painting of a pair of old
shoes, though beautifully executed and copyrightable as a
painting, would not qualify for a shoe design copyright.
See Appendix, fig. 3, *infra*; 17 U. S. C. §§113(a)–(b).
Courts have similarly denied copyright protection to ob-
jects that begin as three-dimensional designs, such as
measuring spoons shaped like heart-tipped arrows, *Bona-
zoli* v. *R. S. V. P. Int'l, Inc.,* 353 F. Supp. 2d 218, 226–227

(RI 2005); candleholders shaped like sailboats, *Design Ideas, Ltd.* v. *Yankee Candle Co.,* 889 F. Supp. 2d 1119, 1128 (CD Ill. 2012); and wire spokes on a wheel cover, *Norris Industries, Inc.* v. *International Tel. & Tel. Corp.*, 696 F. 2d 918, 922–924 (CA11 1983). None of these designs could qualify for copyright protection that would prevent others from selling spoons, candleholders, or wheel covers with the same design. Why not? Because in each case the design is not separable from the utilitarian aspects of the object to which it relates. The designs cannot be physically separated because they themselves make up the shape of the spoon, candleholders, or wheel covers of which they are a part. And spoons, candleholders, and wheel covers are useful objects, as are the old shoes depicted in Van Gogh's painting. More importantly, one cannot easily imagine or otherwise conceptualize the design of the spoons or the candleholders or the shoes *without that picture, or image, or replica being a picture of spoons, or candleholders, or wheel covers, or shoes.* The designs necessarily bring along the underlying utilitarian object. Hence each design is not conceptually separable from the physical useful object.

The upshot is that one could copyright the floral design on a soupspoon but one could not copyright the shape of the spoon itself, no matter how beautiful, artistic, or esthetically pleasing that shape might be: A picture of the shape of the spoon is also a picture of a spoon; the picture of a floral design is not. See Compendium §924.2(B).

To repeat: A separable design feature must be "capable of existing independently" of the useful article as a separate artistic work that is not itself the useful article. If the claimed feature could be extracted without replicating the useful article of which it is a part, and the result would be a copyrightable artistic work standing alone, then there is a separable design. But if extracting the claimed features would necessarily bring along the underlying useful arti-

cle, the design is not separable from the useful article. In many or most cases, to decide whether a design or artistic feature of a useful article is conceptually separate from the article itself, it is enough to imagine the feature on its own and ask, "Have I created a picture of a (useful part of a) useful article?" If so, the design is not separable from the useful article. If not, it is.

In referring to imagined pictures and the like, I am not speaking technically. I am simply trying to explain an intuitive idea of what separation is about, as well as how I understand the majority's opinion. So understood, the opinion puts design copyrights in their rightful place. The law has long recognized that drawings or photographs of real world objects are copyrightable as drawings or photographs, but the copyright does not give protection against others making the underlying useful objects. See, *e.g.*, *Burrow-Giles Lithographic Co.* v. *Sarony*, 111 U. S. 53 (1884). That is why a copyright on Van Gogh's painting would prevent others from reproducing that painting, but it would not prevent others from reproducing and selling the comfortable old shoes that the painting depicts. Indeed, the purpose of §113(b) was to ensure that "'copyright in a pictorial, graphic, or sculptural work, portraying a useful article as such, does not extend to the manufacture of the useful article itself.'" H. R. Rep., at 105.

## II

To ask this kind of simple question—does the design picture the useful article?—will not provide an answer in every case, for there will be cases where it is difficult to say whether a picture of the design is, or is not, also a picture of the useful article. But the question will avoid courts focusing primarily upon what I believe is an unhelpful feature of the inquiry, namely, whether the design can be imagined as a "two- or three-dimensional work of art." *Ante,* at 1, 17. That is because virtually any indus-

trial design can be thought of separately as a "work of art":
Just imagine a frame surrounding the design, or its being
placed in a gallery. Consider Marcel Duchamp's "ready-
mades" series, the functional mass-produced objects he
designated as art. See Appendix, fig. 4, *infra*. What is
there in the world that, viewed through an esthetic lens,
cannot be seen as a good, bad, or indifferent work of art?
What design features could not be imaginatively repro-
duced on a painter's canvas? Indeed, great industrial
design may well include design that is inseparable from
the useful article—where, as Frank Lloyd Wright put it,
"form and function are one." F. Wright, An Autobiography
146 (1943) (reprint 2005). Where they are one, the de-
signer may be able to obtain 15 years of protection
through a design patent. 35 U. S. C. §§171, 173; see also
McKenna & Strandburg, Progress and Competition in
Design, 17 Stan. Tech. L. Rev. 1, 48–51 (2013). But, if
they are one, Congress did not intend a century or more of
copyright protection.

## III

The conceptual approach that I have described reflects
Congress' answer to a problem that is primarily practical
and economic. Years ago Lord Macaulay drew attention to
the problem when he described copyright in books as a
"tax on readers for the purpose of giving a bounty to writ-
ers." 56 Parl. Deb. (3d Ser.) (1841) 341, 350. He called
attention to the main benefit of copyright protection,
which is to provide an incentive to produce copyrightable
works and thereby "promote the Progress of Science and
useful Arts." U. S. Const., Art. I, §8, cl. 8. But Macaulay
also made clear that copyright protection imposes costs.
Those costs include the higher prices that can accompany
the grant of a copyright monopoly. They also can include
(for those wishing to display, sell, or perform a design,
film, work of art, or piece of music, for example) the costs

of discovering whether there are previous copyrights, of contacting copyright holders, and of securing permission to copy. *Eldred* v. *Ashcroft*, 537 U. S. 186, 248–252 (2003) (BREYER, J., dissenting). Sometimes, as Thomas Jefferson wrote to James Madison, costs can outweigh "the benefit even of limited monopolies." Letter from Thomas Jefferson to James Madison (July 31, 1788), in 13 Papers of Thomas Jefferson 443 (J. Boyd ed. 1956) (Jefferson Letter). And that is particularly true in light of the fact that Congress has extended the "limited Times" of protection, U. S. Const., Art. I, §8, cl. 8, from the "14 years" of Jefferson's day to potentially more than a century today. Jefferson Letter 443; see also *Eldred, supra*, at 246–252 (opinion of BREYER, J.).

The Constitution grants Congress primary responsibility for assessing comparative costs and benefits and drawing copyright's statutory lines. Courts must respect those lines and not grant copyright protection where Congress has decided not to do so. And it is clear that Congress has not extended broad copyright protection to the fashion design industry. See, *e.g.*, 1 Nimmer §2A.08[H][3][c] (describing how Congress rejected proposals for fashion design protection within the 1976 Act and has rejected every proposed bill to this effect since then); *Esquire, Inc.* v. *Ringer*, 591 F. 2d 796, 800, n. 12 (CADC 1978) (observing that at the time of the 1976 Copyright Act, Congress had rejected every one of the approximately 70 design protection bills that had been introduced since 1914); *e.g.,* H. R. 5055, 109th Cong., 2d Sess.: "To Amend title 17, United States Code, to provide protection for fashion design" (introduced Mar. 30, 2006; unenacted). Congress has left "statutory . . . protection . . . largely unavailable for dress designs." 1 Nimmer §2A.08[H][3][a]; Raustiala & Sprigman, The Piracy Paradox: Innovation and Intellectual Property in Fashion Design, 92 Va. L. Rev. 1687, 1698–1705 (2006).

Congress' decision not to grant full copyright protection to the fashion industry has not left the industry without protection. Patent design protection is available. 35 U. S. C. §§171, 173. A maker of clothing can obtain trademark protection under the Lanham Act for signature features of the clothing. 15 U. S. C. §1051 *et seq.* And a designer who creates an original textile design can receive copyright protection for that pattern as placed, for example, on a bolt of cloth, or anything made with that cloth. *E.g.*, Compendium §924.3(A)(1). "[T]his [type of] claim . . . is generally made by the fabric producer rather than the garment or costume designer," and is "ordinarily made when the two-dimensional design is applied to the textile fabric and before the garment is cut from the fabric." 56 Fed. Reg. 56531 (1991).

The fashion industry has thrived against this backdrop, and designers have contributed immeasurably to artistic and personal self-expression through clothing. But a decision by this Court to grant protection to the design of a garment would grant the designer protection that Congress refused to provide. It would risk increased prices and unforeseeable disruption in the clothing industry, which in the United States alone encompasses nearly $370 billion in annual spending and 1.8 million jobs. Brief for Council of Fashion Designers of America, Inc., as *Amicus Curiae* 3–4 (citing U. S. Congress, Joint Economic Committee, The New Economy of Fashion 1 (2016)). That is why I believe it important to emphasize those parts of the Court's opinion that limit the scope of its interpretation. That language, as I have said, makes clear that one may not "claim a copyright in a useful article merely by creating a replica of that article in some other medium," which "would not give rise to any rights in the useful article that inspired it." *Ante,* at 7–8.

BREYER, J., dissenting

IV

If we ask the "separateness" question correctly, the answer here is not difficult to find. The majority's opinion, in its appendix, depicts the cheerleader dress designs that Varsity submitted to the Copyright Office. Can the design features in Varsity's pictures exist separately from the utilitarian aspects of a dress? Can we extract those features as copyrightable design works standing alone, without bringing along, via picture or design, the dresses of which they constitute a part?

Consider designs 074, 078, and 0815. They certainly look like cheerleader uniforms. That is to say, they look like pictures of cheerleader uniforms, just like Van Gogh's old shoes look like shoes. I do not see how one could see them otherwise. Designs 299A and 2999B present slightly closer questions. They omit some of the dresslike context that the other designs possess. But the necklines, the sleeves, and the cut of the skirt suggest that they too are pictures of dresses. Looking at all five of Varsity's pictures, I do not see how one could conceptualize the design features in a way that does not picture, not just artistic designs, but dresses as well.

Were I to accept the majority's invitation to "imaginatively remov[e]" the chevrons and stripes *as they are arranged* on the neckline, waistline, sleeves, and skirt of each uniform, and apply them on a "painter's canvas," *ante,* at 10, that painting would be of a cheerleader's dress. The esthetic elements on which Varsity seeks protection exist only as part of the uniform design—there is nothing to separate out but for dress-shaped lines that replicate the cut and style of the uniforms. Hence, each design is not physically separate, nor is it conceptually separate, from the useful article it depicts, namely, a cheerleader's dress. They cannot be copyrighted.

Varsity, of course, could have sought a design patent for its designs. Or, it could have sought a copyright on a

textile design, even one with a similar theme of chevrons and lines.

But that is not the nature of Varsity's copyright claim. It has instead claimed ownership of the particular "'treatment and arrangement'" of the chevrons and lines of the design as they appear at the neckline, waist, skirt, sleeves, and overall cut of each uniform. Brief for Respondents 50. The majority imagines that Varsity submitted something different—that is, only the surface decorations of chevrons and stripes, as in a textile design. As the majority sees it, Varsity's copyright claim would be the same had it submitted a plain rectangular space depicting chevrons and stripes, like swaths from a bolt of fabric. But considered on their own, the simple stripes are plainly unoriginal. Varsity, then, seeks to do indirectly what it cannot do directly: bring along the design and cut of the dresses by seeking to protect surface decorations whose "treatment and arrangement" are *coextensive with that design and cut.* As Varsity would have it, it would prevent its competitors from making useful three-dimensional cheerleader uniforms by submitting plainly unoriginal chevrons and stripes as cut and arranged on a useful article. But with that cut and arrangement, the resulting pictures on which Varsity seeks protection do not simply depict designs. They depict clothing. They depict the useful articles of which the designs are inextricable parts. And Varsity cannot obtain copyright protection that would give them the power to prevent others from making those useful uniforms, any more than Van Gogh can copyright comfortable old shoes by painting their likeness.

I fear that, in looking past the three-dimensional design inherent in Varsity's claim by treating it as if it were no more than a design for a bolt of cloth, the majority has lost sight of its own important limiting principle. One may not "claim a copyright in a useful article merely by creating a replica of that article in some other medium," such as in a

picture.  *Ante,* at 7.  That is to say, one cannot obtain a copyright that would give its holder "any rights in the useful article that inspired it."  *Ante,* at 8.

With respect, I dissent.

APPENDIX TO OPINION OF BREYER, J.




Fig. 2



Fig. 1

14

APPENDIX TO OPINION OF BREYER, J.



Fig. 3: Vincent Van Gogh, "Shoes"

APPENDIX TO OPINION OF BREYER, J.



Fig. 4: Marcel Duchamp,
"In Advance of the Broken Arm"