In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 19-1825

LOGAN A. OWSLEY,

*Plaintiff-Appellant,*

*v.*

MARK E. GORBETT, *et al.,*

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-cv-00552-RLY-MJD — **Richard L. Young**, *Judge.*

———————————

ARGUED MAY 19, 2020 — DECIDED JUNE 1, 2020

———————————

Before EASTERBROOK, BRENNAN, and ST. EVE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Public officials in Bartholomew County, Indiana, believe that Cary Owsley committed suicide. His son, Logan, believes that Cary was murdered by his wife, Lisa, and her sons DeWayne and Josh. Contending that the Sheriff and his deputies have lost or destroyed evidence that would help Cary's estate to pursue claims against

the putative murderers, Logan filed this federal civil-rights suit, invoking 42 U.S.C. §§ 1983, 1985, and 1986.

Logan purported to represent his father's estate, but except for a brief time he has not been its administrator. Lisa Owsley occupied that position, and Indiana's judiciary denied Logan's request to replace her. See *In re Estate of Owsley*, No. 03C01-1406-ES-002796 (Ind. Cir. Ct., Feb. 16, 2016). See also *Owsley v. Gorbett*, 87 N.E.3d 44 (Ind. App. 2017) (affirming the denial of Logan's motion to open a separate estate). The estate decided not to pursue litigation, but it did assign to Logan "[w]hatever interest the Estate of Cary A. Owsley has in the federal lawsuit" (*id*. at ¶5). The state's appellate court implied that "whatever interest" the estate had is worthless but left final determination to the federal court.

The federal court dismissed Logan's suit for lack of standing. Instead of deciding whether the assignment to Logan conferred a valuable interest, the judge wrote that Logan has not suffered any personal injury. And because Logan's federal claim failed, the judge dismissed without prejudice Logan's state-law tort claims for infliction of emotional distress. All parties are citizens of Indiana, so only the supplemental jurisdiction of 28 U.S.C. §1367 could support the tort claims, and with federal jurisdiction lacking the state-law claims also had to go.

Dismissal of the federal claims on jurisdictional grounds was a misstep. Logan asserts injury and seeks damages. Decedents' relatives may have damages claims against tortfeasors, and Logan also has the benefit of the assignment from the estate. Federal law permits assignees to sue on assignors' claims. See *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269 (2008). The right to sue as representative of an

estate depends on state law, see Fed. R. Civ. P. 17(b)(3), and the district court properly recognized that the state court's decision to retain Lisa as the estate's representative is not subject to collateral attack. Cf. *Marshall v. Marshall*, 547 U.S. 293 (2006) (discussing the probate exception to federal jurisdiction). Calling Lisa a "conspirator" does not enable a federal court to take over a probate matter. That leaves the assigned claim. The district judge evidently believed that it is not worth anything, but that concerns the merits rather than subject-matter jurisdiction. See *Bell v. Hood*, 327 U.S. 678 (1946). Otherwise every losing suit would be dismissed for lack of jurisdiction.

Logan contends that, by concealing or destroying evidence that the estate could have used to sue Lisa and her children—or perhaps to persuade a state judge to replace Lisa as the estate's administrator—defendants deprived the estate of access to the courts, thus violating the Constitution. (Logan does not contend, however, that he or his father's estate had a right to have the Sheriff and police investigate anyone for murder. See *Castle Rock v. Gonzales*, 545 U.S. 748 (2005); *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989).) Like the state court, we have doubts about this "access" approach.

Logan does not contend that the defendants did anything that blocked the estate from filing a wrongful-death suit. Cary's estate decided not to sue because it believed that he committed suicide, not because defendants in this federal suit closed the courthouse doors.

Had a suit been filed, the state court could have issued discovery orders, and if the objects of those orders concealed or destroyed evidence, the state judge could have found

them in contempt or imposed other appropriate sanctions. Cf. Fed. R. Civ. P. 37(b)(2)(A) (listing the sanctions that federal courts use for failure to produce evidence in discovery), 45(g) (authorizing contempt sanctions against nonparties).

All of this is equally true about the proceedings Logan filed in state court seeking to replace Lisa as the administrator. Far from denying him access to the state courts, defendants provided Logan with grounds to litigate there. Which he did.

Logan predicts that sanctions in state litigation would have been ineffective, but why conduct a stand-alone federal suit to assess how state litigation would have proceeded? Spoliation of evidence all too often requires resolution in the course of litigation. We asked at oral argument if Logan's counsel was aware of any decision holding that asserted spoliation supplies the basis of an independent federal suit under an "access to the courts" rubric. Counsel did not cite any such decision, and our own research did not locate one. Nor could we find a decision holding that potential witnesses' asserted willingness to lie or otherwise frustrate the progress of a state suit permits independent federal litigation. A person can have ample access to the courts, though it will be hard to assemble the evidence needed to win.

None of the Supreme Court's "access to the courts" cases hints that a potential discovery problem can be the basis of a federal suit, when the state courts are open. Just as a federal defense does not allow a federal court to decide a suit founded on state law, see *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019); *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13–14 (1983), a poten-

tial federal issue during discovery in a suit founded on state law should not spawn a separate federal suit.

The district court did not consider this subject, and perhaps Logan has a line of argument, not articulated in his appellate briefs, that would overcome our skepticism. The first order of business on remand should be to decide whether an access-to-courts claim, the only thing covered by the assignment, can be based on an assertion that the defendants concealed or destroyed evidence that could have been relevant, had suit been filed in state court.

VACATED AND REMANDED